UNITED STATES DISTRICT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**TYLER MURDOCK,** *et al.***,**
    Plaintiffs,

v.

**CERTAIN UNDERWRITERS AT LLOYDS, LONDON PIONEER,** *et al.***,**
    Defendants.

Case No. 4:21-cv-1197-CLM

## MEMORANDUM OPINION

Tyler and April Murdock sued their insurance carrier, Certain Underwriters at Lloyds, London Pioneer ("Lloyds"), and the writer of their insurance policy, Tim Parkman, Inc. ("TPI") (collectively "Defendants"), alleging several causes of action: (Count I) Breach of Contract; (Count II) Normal Bad Faith; (Count III) Abnormal Bad Faith; (Count IV) Fraudulent Suppression; and (Count V) Deceit. (Doc. 1). The Defendants ask the court to dismiss all claims against them, except for Count I. (Doc. 6).

For the reasons stated within, the court will **GRANT in PART** and **DENY in PART** the Defendants' motion to dismiss. (Doc. 6). This case will move forward on Counts I, II, and III.

## BACKGROUND

The Murdocks own and operate a chicken farm in Alabama. Their houses were insured under a Commercial Property Policy of Insurance provided by Lloyds and written through TPI. The Murdocks timely paid all premiums, and the Policy remained in effect until October 10, 2019. (Doc. 1, p. 2).

1

In September 2019, there was a strong windstorm that damaged the houses. The Murdocks submitted a claim to Lloyds, who retained a third-party claim service to inspect the damage and determine whether it was windstorm related and thus covered by the insurance policy. The third-party claim service sent an examiner to inspect the houses on October 1, 2019. The Murdocks state that the examiner conducted only a superficial inspection of the poultry houses and did not inspect the interior sections and structures that the storm damaged. The examiner determined that though there was some wind damage to the exterior of the building, the structural damage was consistent with "long term weight and settling." At some point, the third-party claim service provider reported the findings to Lloyds. On October 10, 2019, the Murdocks—unaware of the third-party claim service examiner's findings—renewed their policy with Lloyds for another year. The Murdocks allege that they would not have renewed their policy had they been aware: (1) of the examiner's report stating that the structural damage was not wind related; and (2) that Lloyds was unlikely to pay on any future claims for structural damage to their poultry houses.

The Murdocks' claims agent, with authority from Lloyds, arranged for an engineer to inspect the houses and to validate the third-party claim service examiner's earlier report. In November 2019, the engineer inspected the exterior of the poultry buildings. The engineer's report noted that he observed wind damage but ultimately concluded that the structural damage was due to "age related deterioration" and "thermal expansion." (Doc. 1, p. 4).

On January 8, 2020, Lloyds denied coverage, stating that the damage to the houses was caused by "age-related deterioration, thermal expansion and contraction of the wood, lack of maintenance and failed and inadequate trusses that caused the out-of-plumb, sagging and buckling of the buildings and the loosening of the fasteners." (Doc. 1, p. 5). The Murdocks challenged Lloyds' denial, asserting that the inspections were inadequate and could not have supported the inspectors' conclusions. For

example, the Murdocks questioned how the engineer could make a conclusion about the trusses without having looked at the trusses.

In late January 2020, the engineer reinspected the Murdocks' poultry houses to examine the interior of the building and the roof support structure. Following his second inspection, the engineer reaffirmed the conclusions from his first report. Lloyds reissued its denial of the Murdocks' claim.

Then a second windstorm event occurred in April 2020. The Murdocks assert that Lloyds failed or refused to investigate the damage. So the Murdocks hired their own engineer to inspect the poultry houses. This engineer concluded that the damage was wind related. Lloyds then retained yet another engineer to reinspect the poultry houses. This engineer concluded that "the damage to the roof trusses within the two poultry houses was caused by mishandling of the trusses during transportation and/or erection." (Doc. 1, p. 7). And Lloyds confirmed its denial of the Murdocks' claims.

So the Murdocks sued.

## **STANDARD OF REVIEW**

On Rule 12 motions to dismiss, the court accepts the allegations in the Murdocks' complaint as true and construes them in the light most favorable to the Murdocks. *Lanfear v. Home Depot, Inc.*, 697 F.3d 1267, 1275 (11th Cir. 2012). But the court need not accept legal conclusions or unwarranted factual inferences as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The ultimate question is whether all the Murdocks' allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Id.* at 678–79. If the facts as pleaded could entitle the Murdocks to relief, then the court must deny the Defendants' motion to dismiss. If, however, the court accepts all the Murdocks' pleaded facts as true, and the Murdocks still would not be entitled to relief, then the court must grant the motion.

# ANALYSIS

Defendants do not ask the court to dismiss Count I, so the court starts with Counts II and III.

**Counts II and III:**

In Count II, the Murdocks allege that Lloyds engaged in normal bad faith. (Doc. 1, pp. 8–10). In Count III, the Murdocks allege that Lloyds engaged in abnormal bad faith. (Doc. 1, pp., 10–11). Lloyds asked the court to dismiss both claims, asserting that it had an arguable reason to deny the Murdocks' claims based on the results of the pre-denial investigations. (Doc. 6, pp. 6–9). Under Alabama law, there is only one tort of bad faith, but there are two methods by which a plaintiff can prove a bad-faith claim—normal and abnormal. *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013).

Normal bad faith is also known as a "bad-faith-refusal-to-pay." *Id.* at 257. To prove a bad-faith claim under the normal method, a plaintiff must establish these elements: (1) an insurance contract between the parties that the defendant breached; (2) an intentional refusal to pay the insured's claim; (3) the lack of any reasonably legitimate or arguable reason for that refusal (*i.e.*, the lack of a debatable reason); and (4) the insurer's actual knowledge of the lack of any legitimate or arguable reason. *National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). Abnormal bad faith is known as a "bad-faith-refusal-to-investigate." *Brechbill*, 144 So. 3d at 256. To prove a bad-faith claim under the abnormal method, a plaintiff must prove the four elements required to prove normal bad faith, plus a fifth element—proof of the "insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Id.* (quoting *Bowen*, 417 So. 2d at 183).

1. <u>First denial</u>: In their Complaint, the Murdocks assert that neither the third-party claims service examiner nor the engineer who inspected the chicken houses before Lloyds denied their claim inspected the interior of the houses. The Murdocks argue that Lloyds could not have had a

reasonably legitimate or arguable reason to at first deny their insurance claim based only on the inspections of the exterior of the poultry houses. The court agrees (at least for Rule 12 purposes). If the Murdocks prove these facts, they could show that Lloyds did not have a reasonable or justifiable basis to deny their claim at the time of Lloyds' first denial.

2. <u>Later denials</u>: That Lloyds sent their engineer back to re-inspect the poultry houses—inside and out—after it denied the Murdocks' claim does not create a reasonably legitimate or arguable reason for the initial denial because the court must consider Lloyd's reasoning at the time it denied the claim. But it does matter for any later denials. Once the engineer went back out to conduct a thorough examination of both the interior and exterior of the houses, then issued his findings that the damage was not wind related, Lloyds had a debatable reason to deny the Murdocks' claims. So the court grants the motion to dismiss the Murdocks' bad-faith claim as much as it looks at denials that came after the re-inspection. The Murdocks may proceed on their bad-faith claim, limited to Lloyds' first denial.

**COUNT IV:**

The Murdocks claim that Lloyds and TPI fraudulently suppressed: (1) the results of the third-party claim service examiner's inspection; and (2) Lloyds' decision to deny the Murdocks' claim (and any future claims they would make). The Murdocks assert that the Defendants had a duty to disclose and failed to disclose the inspection findings and the denial decision to the Murdocks before they approved and renewed the Murdocks' insurance policy for another year. (Doc. 1, pp. 11–12). The Defendants ask the court to dismiss this claim. (Doc. 6, pp. 9–11).

The elements of fraudulent suppression are: (1) the defendant had a duty to disclose; (2) the defendant suppressed an existing, material fact; (3) the defendant had actual knowledge of the fact and its materiality; (4) the plaintiff's lack of knowledge induced it to act; and (5) the plaintiff suffered actual damage as a proximate result. *Hardy v. Blue Cross and Blue Shield of Ala.*, 585 So.2d 29, 32 (Ala. 1991). But in the absence of a

duty to disclose and when the information is not requested, mere silence does not constitute fraud. *Id.* at 32.

The existence of a duty to disclose a material fact is a question of law. *State Farm Fire and Cas. Co. v. Owen*, 729 So.2d 834, 839 (1998). "[D]uty analysis does not become a jury function simply because fact questions are implicated in the analysis." *Id.* Under Alabama law, "[t]he obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." *Ala. Code* § 6-5-102. Thus, a legal duty to disclose exists if either (1) there is a recognized confidential relationship, usually a fiduciary one, between the parties or (2), if such confidential relationship does not exist, if the "particular circumstances" support the existence of a duty. *Owen*, 729 So.2d at 839. Under the second option, Alabama courts have recognized several relevant factors a court can consider, including the relationship of the parties, the relevant knowledge of the parties, the value of a particular fact, the plaintiff's opportunity to find out about a fact, the customs of the trade, and other relevant circumstances. *Id.* at 842–43 (citing *Berkel & Co. Contractors, Inc. v. Providence Hosp.*, 454 So.2d 496, 506 (Ala. 1984)).

In their Complaint, the Murdocks state all elements of a fraudulent suppression claim largely in a conclusory manner. The Complaint states that, but for the Defendants' decision not to inform them of the investigation findings and Lloyds' alleged decision, the Murdocks would not have renewed their insurance policy. Thus, the Murdocks claim that the Defendants induced them into renewing their policy. But as the Defendants note in their motion to dismiss, the Murdocks do not allege facts to show that, at the time of renewal, the Defendant had actual knowledge of the third-party claim service examiner's findings. After all, the renewal occurred just nine days after the third-party claim service examiner conducted his investigation. Although the Complaint asserts that the third-party claim service reported its conclusions to Lloyds (through the Murdocks' claims agent), the Complaint does not specify *when* this communication took place and does not assert that it took place before the Murdocks renewed their insurance policy.

Even if the Defendants had actual knowledge, the Complaint is still deficient because it fails to allege facts sufficient to support the legal conclusion that the Defendants had a duty to disclose. The Complaint shows that the parties had an insurer-insured relationship, but under Alabama law, an insurer-insured relationship does not constitute a "confidential relation[]" that creates a duty to disclose. *Ala.* Code § 6-5-102; *see Hardy*, 585 So.2d at 32; *King v. National Found. Life Ins. Co.*, 541 So.2d 502 (Ala. 1989). So the Murdocks would need to allege facts to support the existence of particular circumstances that would give rise to a duty.

The Complaint does not allege that the Murdocks could not ask about the status of their recent claim before making the decision to renew. Thus, the court has no reason to believe that the Murdocks could not have discovered this information with reasonable diligence. The Complaint also makes no allegation that it would be a custom of the trade for an insurance company to disclose the status of all ongoing claim investigations before allowing a customer to renew, particularly when the turn-around time is as close as it is here. So the court finds that, even when the factual allegations are taken as true, the Complaint fails to assert facts sufficient to support the existence of a duty to disclose.

So the court will grant the Defendants' motion to dismiss the claim of fraudulent suppression.

## COUNT V:

Finally, the Murdocks allege that Defendants Lloyds and TPI are liable for deceit, under the same theory for which they alleged fraudulent suppression. (Doc. 1, pp. 13–15). The Defendants ask the court to dismiss this claim. (Doc. 6, pp. 9–11). The Defendants argue that the factual allegations supporting this claim are essentially the same as the facts asserted to support the fraudulent concealment claim, and the Complaint is thus deficient for the same reasons.

Ala. Code § 6-5-104(a) describes that a party that "willfully deceives another with intent to induce him to alter his position to his injury or risk is liable" for deceit. Though not precisely stated in their Complaint or in their response to the motion to dismiss, the Murdocks appear to allege liability under Ala. Code § 6-5-104(b)(3), which states that "[t]he suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact," is one means of deceit. Regardless of the plaintiff's theory of deceit, this claim fails for the same reasons that the fraudulent suppression claim fails. First, the Complaint puts forth no facts showing that the Defendants knew about the third-party claim service examiner's conclusions from his investigation nine days before the date the Murdocks renewed their insurance coverage. Second, the Complaint does not allege facts sufficient to show that the Defendants owed the Murdocks a duty disclose this information.

Accordingly, the court will grant the Defendants' motion to dismiss the claim of deceit.

## CONCLUSION

For the reasons listed above, the court will **GRANT in PART** and **DENY in PART** the Defendants' motion to dismiss. (Doc. 6). This case will move forward on Counts I, II, and III.

Because the remaining claims are only claims against Defendant Lloyds, the court will **DIRECT** the Clerk to dismiss Defendant TPI from this lawsuit.

The court will enter a separate order that carries out this ruling.

**DONE** on May 23, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE